UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDNA WHITLEY, in her capacity
as the Personal Representative of the
Estate of DANIEL JOSEPH
WHITLEY, deceased,

                Plaintiff,                              Hon. Hala Y. Jarbou

v.                                              Case No. 1:22-cv-448

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Edna Whitley, the Personal Representative of the Estate of Daniel Joseph Whitley, deceased, has sued the Michigan Department of Corrections (MDOC) and MDOC employees Gregory Skipper, George Whitinger, James Leland, R.N., Audrianna Williams, R.N., Darnell Johnson, Jeremy Rykse, and Corrections Officer Stokes, alleging claims arising out of Daniel Whitley's suicide on December 7, 2018, while he was incarcerated with the MDOC at the Michigan Reformatory (RMI). Plaintiff alleges a claim against all Defendants pursuant to 42 U.S.C. § 1983 for violation of Whitley's Eighth Amendment rights (Count I); a claim against the MDOC for failure to train, inadequate policies and/or procedures, customs, and practices and failure to supervise (Count II); and a claim against all Defendants for violation of the Americans with Disabilities Act (ADA) (Count III).

This matter is presently before me on Defendants' Motion to Dismiss. (ECF No. 23.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED**.

## I.  Background[1]

On November 15, 2018, Whitley, who was then incarcerated with the MDOC, was transferred to RMI, where he remained until his death. He had been scheduled to be released in August 2019. At that time, Defendant Skipper was the Warden of RMI, Defendant Whitinger was a Lieutenant at RMI, Defendants Leland and Williams were nurses at RMI, and Defendants Johnson, Rykse, and Stokes were Corrections Officers at RMI. (ECF No. 1 at PageID.3–6.) Whitley suffered from mental illness, for which he had been prescribed medication and received psychiatric treatment. A transfer order notifying RMI officials of Whitley's medical and psychiatric issues and other pertinent information was generated in connection with the transfer. (*Id.* at PageID.6.)

Plaintiff alleges that, upon information and belief, Defendants were aware of Whitley's medical and mental health conditions and history, including that he was at a high risk for a suicide attempt. She further alleges that, in spite of this knowledge, Defendants failed to take adequate steps to address the risk and did not properly monitor Whitley, except during walk-by rounds performed, at most, once per hour. (PageID.7.) Plaintiff alleges that Whitley "communicated to prison officials and/or Defendants that he was going to commit suicide." The factual premise for this allegation is that on the evening of his death, Whitley "placed a handwritten note in the health care box at RMI in which he stated his intentions to hang himself, and otherwise communicated his intention to take his own life." (*Id.*)

---

[1] The facts set forth herein are taken solely from the complaint.

On December 7, 2017, at 9:43 p.m., Defendant Johnson found Whitley hanging with his bed sheet tied around his neck and attached to the bars of his cell. Another handwritten suicide note was found in his cell at that time. (*Id.* at PageID.8.) Plaintiff alleges that, at all relevant times, Whitley displayed a disheveled appearance, depressed mood, discouraged attitude, poor reasoning, poor impulse control, poor judgment, and/or poor insight, which Defendants would have noticed and alerted them to his risk of suicide. (*Id.*) She further alleges that, upon information and belief, "Whitley openly communicated with Defendants that he was suicidal," which should have caused Defendants to take steps to alleviate the risk. (*Id.* at PageID.9.)

Plaintiff filed her complaint in this case on August 26, 2021, in the Eastern District of Michigan. On October 6, 2021, Defendants filed a motion to dismiss the complaint for improper venue or, alternatively, for failure to state a claim. (ECF No. 5.) Plaintiff responded to the motion on October 27, 2021, and Defendants replied on November 8, 2021. (ECF Nos. 15 and 16.) On May 17, 2022, the court entered an order denying the motion to dismiss and transferring venue to this district. (ECF No. 18.) Defendants refiled their motion to dismiss on June 8, 2022. (ECF No. 23.)

## II.  Motion Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint

must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79.

## III.  Discussion

### A.  Eleventh Amendment Immunity

Plaintiff's Section 1983 claims against the MDOC and the individual Defendants in their official capacities should be dismissed because they are barred by the Eleventh Amendment.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

4

Likewise, Plaintiff's official capacity claims against the individual Defendants are barred by the Eleventh Amendment. A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). An official capacity suit is thus no different than a suit against the state itself. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). Because the Eleventh Amendment prohibits suits for damages against states in federal court, *see Quern v. Jordan*, 440 U.S. 332, 342 (1979), damage claims against state officials in their official capacities are also barred by the Eleventh Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials sued in their official capacity for money damages") (citing *Lapides v Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)).

Plaintiff does not engage with Defendants' Eleventh Amendment arguments. She notes that the Eleventh Amendment does not bar an individual capacity suit against a state official, and she further notes that Congress has the authority to abrogate the States' Eleventh Amendment immunity. Neither argument is responsive to Defendants' motion. While Plaintiff is correct that the Eleventh Amendment does not bar individual capacity claims against state officers, Defendants do not seek dismissal of the individual capacity claims on that ground. Moreover, Plaintiff fails to identify an explicit waiver of Eleventh Amendment immunity by the State of Michigan or Congress that is required to proceed against the MDOC in federal court. *See Pennhurst*, 465 U.S. at 100.

Accordingly, the claim against the MDOC and the official capacity claims against the individual Defendants should be dismissed.

B.      **Individual Capacity Claims**

Because Plaintiff was a convicted prisoner, his Section 1983 claim arises under the Eighth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983). The unnecessary and wanton infliction of pain encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). A deliberate indifference claim has two components. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a detainee receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). In the context of mental health, "[p]sychological needs may constitute such 'serious medical needs' particularly when those psychological needs 'result in suicidal tendencies.'" *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)). While an inmate has no right to be screened correctly for suicidal tendencies, once a prisoner has been identified as suicidal, prison officials are obligated to provide him medical care. *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005). Because negligence will not suffice, *Perez v. Oakland Cnty.*, 466 F.3d 416, 424 (6th Cir. 2006), an "[a]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation," cannot support a claim of deliberate indifference, *Farmer*, 511 U.S. at 838. A plaintiff must establish that each Defendant was deliberately indifferent. *Phillips v. Roane Cnty.*, 534 F.3d 531, 542 (6th Cir. 2008).

To establish the subjective component in a case involving a prisoner suicide, the plaintiff must show that it was obvious that there was a "strong likelihood" the prisoner would commit suicide. *Downard for Estate of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (quoting *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005)). The *Downard* court further elaborated on this requirement:

> "[I]t is not enough to establish that an official may have acted with deliberate indifference to some *possibility* of suicide, or even a *likelihood* of suicide; the test is a *strong likelihood* of suicide." *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 336 (6th Cir. 2013); *see also Barber* [*v. City of Salem*], [953 F.2d 232,] at 239–40 [6th Cir. 1992)] (holding that a prison official must have "knowledge of a strong likelihood," not just a "mere possibility," that an inmate will attempt suicide); *Horn v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660–61 (6th Cir. 1994) (same). This is a high bar and typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm. *See Grabow v. County of Macomb*, 580 F. App'x 300, 309 (6th Cir. 2014) (collecting cases).

968 F.3d at 601.

Plaintiff fails to allege plausible Eighth Amendment claims against the individual Defendants. First, as to Defendant Skipper, Plaintiff alleges that he was responsible for "the supervision, training, discipline, and other functions of RMI's employees, staff/or agents, and ensuring that Defendants enforced and abided by the policies and regulations of the MDOC, and the State of Michigan, and the United States." (ECF No. 1 at PageID.4.) A supervisory liability claim under Section 1983 cannot be based on the theory of respondeat superior. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995). "Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'" *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Instead, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff fails to allege that Defendant Skipper engaged in active unconstitutional behavior. She alleges no fact indicating that Defendant Skipper was aware that Whitley was suicidal. As Defendants note, Plaintiff's allegation that Defendants would have noticed that Whitley had a disheveled appearance and depressed mood describes a majority of the inmate population in the MDOC. Such characteristics would not have conveyed a "strong likelihood" of suicide. *Downard*, 968 F.3d at 6000.

Nor does Plaintiff allege that a mental health professional had determined that Whitley was suicidal, that he had been placed on suicide watch, or that he actually told Defendant Skipper that he intended to commit suicide. Plaintiff's allegation in paragraph 41 that Whitley "openly

communicated with Defendants that he was suicidal" is a conclusory allegation that fails to provide the factual details that *Twombly* and *Iqbal* demand for a plausible claim.

Plaintiff's claim against Defendant Whitinger, which makes allegations similar to those against Defendant Skipper, fails for the same reasons.

Plaintiff's allegations against the remaining Defendants are similarly deficient. "Plaintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012). In short, a "plaintiff must plead and prove that the defendant was personally involved in the activity that forms the basis of the complaint." *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272 (W.D. Mich. 1991); *see also Heyne v. Metropolitan Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (internal quotation marks omitted)).

As is the case with Defendants Skipper and Whitinger, Plaintiff fails to include specific allegations as to each Defendant. For example, except for the allegation that Defendant Johnson found Whitley in his cell on December 7, 2018, Plaintiff does not allege any fact involving any individual Defendant from which knowledge that Whitley was suicidal could be inferred. Instead, Plaintiff simple lumps all Defendants together as a group, claiming that Whitley "openly communicated with Defendants that he was suicidal." (*Id.* at PageID.41.) Plaintiff does not allege when this communication occurred, where it occurred, what was said, or who was present. In short, Plaintiff fails to allege a plausible Eighth Amendment claim against any Defendant.

Plaintiff's argument that dismissal should await discovery is incorrect. (ECF No. 26 at PageID.64.) Discovery only comes into play when the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In fact, the Supreme Court has directed district courts not to "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Here, Plaintiff's claims against the individual Defendants consist of nothing more than unsupported conclusions and speculation.[2]

## C.    ADA Claim

Plaintiff's final alleged claim is a claim under Title II of the ADA, which provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must allege that: (1) he has a disability; (2) he is otherwise qualified; and (3) he "was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of [his] disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citation omitted). Plaintiff alleges that Defendants should have accommodated his disability by "providing him with ongoing adequate

---

[2] Deep in her response brief, Plaintiff includes a sentence requesting an opportunity to amend if her complaint is found deficient. (ECF No. 26 at PageID.64.) The time for Plaintiff to file an amendment as a matter of course under Federal Rule of Civil Procedure 15(a)(1) is long expired. Thus, she must file a motion for leave to amend pursuant to Rule 15(a)(2). However, Plaintiff's request in her brief is not a proper motion, and a court does not abuse its discretion in denying an opportunity to amend under such circumstances. *See D.E.&J. Ltd. P'ship v. Conaway*, 133 F. App'x 994, 1001–02 (6th Cir. 2005). Moreover, Plaintiff has not provided a proposed amended pleading to the Court to review. W.D. Mich. LCivR 5.7(f) (providing that a proposed amended pleading must be attached to the motion for leave to amend). Absent the substance of the proposed amendment, a court has no basis to determine whether "justice so requires" an amendment. *Roskam Baking Co., Inc. v. Lanham Mach. Co.*, *Inc.*, 288 F.3d 895, 906 (6th Cir. 2002).

medical and mental health care, and when he threatened to commit suicide, transferring him to a safe location, properly supervising and monitoring him, and providing him with a suicide prevention vest upon request." (ECF No. 1 at PageID.22.)

Plaintiff fails to state a Title II claim because he fails to allege any fact indicating that he was denied mental health treatment or care due to discrimination solely on the basis of his disability. In circumstances such as this, courts have held that a prisoner's claim that he was denied medical or mental health treatment does not provide a basis for an ADA claim. *See Brown v. Ohio*, No. 1:17-cv-764, 2018 WL 798881, at *4 (S.D. Ohio Jan. 5, 2018), *report and recommendation adopted*, 2018 WL 776268 (S.D. Ohio Feb. 8, 2018) ("Plaintiff's allegation that he was wrongly denied mental health treatment does not provide a basis for relief under the ADA."); *Watson v. Mohr*, No. 2:17-cv-457, 2017 WL 6383812, at *5 (S.D. Ohio Dec. 14, 2017), *report and recommendation adopted*, 2018 WL 836484 (S.D. Ohio Feb. 13, 2018) (concluding that the plaintiff's ADA claim was "an Eighth Amendment deliberate indifference claim in another statutory guise"). As in *Watson*, Plaintiff's ADA claim is nothing more than an Eighth Amendment claim recast as an ADA violation. Because Plaintiff fails to allege any fact allowing an inference that he was denied medical care solely because of his alleged disability, his claim fails as a matter of law.

Accordingly, I recommend that the ADA claim be dismissed.

### D.    Gross Negligence

Although Plaintiff neither expressly alleges a state-law gross negligence claim nor invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, Defendants spot an arguable gross negligence claim in paragraphs 59 and 60 of the complaint (within Count I) and request that the Court dismiss it. (ECF No. 24 at PageID.32–33.) Because Plaintiff responds to the argument

and requests that the claim not be dismissed, I recommend that the Court construe the complaint as alleging such claim, exercise its discretion to consider the state-law claim under 28 U.S.C. § 1367, and dismiss it as a matter of law.

Plaintiff's gross negligence claim is based on the same allegations as her Eighth Amendment claim. Defendants contend that Plaintiff's claim fails because Whitley was the proximate cause of his own injuries.

Plaintiff's claim is governed by Mich. Comp. Laws § 691.1407(2), which establishes a basis for immunity for lower-level employees under Michigan's Governmental Tort Liability Act (GTLA). Defendants' motion focuses on the third element—that "[t]he officer's, employee's member's or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws. § 691.1407(2)(c). The Michigan Supreme Court has held that "the proximate cause," as used in Mich. Comp. Laws. § 691.1407(2), "means the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause.'" *Robinson v. City of Detroit*, 462 Mich. 439, 445-46 (2000). In *Robinson*, the plaintiffs were innocent passengers injured in a car driven by an underage driver who was fleeing police officers. Applying the GTLA proximate cause standard, the court held that it was the conduct of the reckless driver, not the conduct of the pursuing police officers, that was the proximate cause of the plaintiffs' injuries. *Id.* at 462. In *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007), the decedent, who was avoiding arrest, was shot and killed by a sniper as the decedent pointed his gun toward police officers. The court held that the officer was immune from the plaintiff's gross negligence claim because "the proximate cause of Rohm's death was not Lt. Ellsworth's conduct, but rather Rohm's decision to disregard his promise to surrender unarmed and to set fire to his residence." *Id.* at 409.

Michigan state and federal courts that have addressed the proximate cause issue in the context of prisoner suicides have consistently held that the prisoner's own suicide was the proximate cause of the death. For example, in *Soles v. Ingham County*, 316 F. Supp. 2d 536 (W.D. Mich. 2004), a judge in this district wrote:

> [E]ven if Mitchell, Cates or Haven were deemed responsible for some nonfeasance amounting to gross negligence, liability could be imposed only if such nonfeasance was the proximate cause of Aaron's death. Yet, it is undisputed that Aaron committed suicide while he was alone in his cell by hanging himself with a bed sheet. The one most immediate, efficient and direct cause of his death was clearly not any nonfeasance by defendants, but Aaron's own volitional self-destructive act.

*Id.* at 546 (citing *Scott v. Charter Twp. of Clinton*, 2002 WL 31160298 (Mich. Ct. App. Sept. 27, 2002)). Similarly, in *Cooper v. Washtenaw County*, 270 Mich. App. 506 (2006), the Michigan Court of Appeals applied *Robinson*'s proximate cause standard and concluded that the defendants were immune on the plaintiff's gross negligence claim because "the one most immediate, efficient, and direct cause of Morton's death was his own conduct," i.e., his suicide while confined in a holding cell. *Id.* at 508–09. *See also Bradley v. City of Ferndale*, 148 F. App'x 499, 514 (6th Cir. 2005) (citing *Scott* and *Soles* and concluding that "it is clear that the one most immediate, efficient and direct cause of Bradley's death was his own act of hanging himself"); *Perez v. Oakland Cnty.*, No. 271406, 2007 WL 914669, at *3 (Mich. Ct. App. Mar. 27, 2007) (citing *Cooper* and concluding that the proximate cause of the inmate's death was his own act of suicide).

Plaintiff fails to address the foregoing cases or to cite persuasive authority to the contrary. As in *Soles*, *Cooper*, and the other cited cases, Whitley's act of hanging himself with his bedsheet was the one most immediate, efficient, and direct cause of his own death. Therefore, Plaintiff's gross negligence claim must be dismissed.

## IV.   Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion to

dismiss (ECF No. 23) and dismiss Plaintiff's complaint with prejudice.

Dated: August 8, 2022                          /s/ Sally J. Berens
                                              SALLY J. BERENS
                                              U.S. Magistrate Judge

## <u>NOTICE TO PARTIES</u>

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court

within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).